**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| HYDROXYL SYSTEMS, INC. and INFILCO DEGREMONT, INC., Plaintiffs, | : | Case No.: 07-cv-00399 ML-LDA |
| vs. | : | |
| ANOXKALDNES GLOBAL A.B., ANOXKALDNES, INC. and MICHAEL JOHNS, Defendants. | : | |

## RULE 16 CONFERENCE STATEMENT OF CLAIMS

Pursuant to Local Rule 16, Hydroxyl Systems, Inc. ("Hydroxyl") submits this Statement of Claims.[1]

## INTRODUCTION

This action concerns a former Hydroxyl employee named Michael Johns ("Johns"), who left Hydroxyl to work for Defendant AnoxKaldnes, Inc. ("AnoxKaldnes"). Plaintiffs contend that his employment with AnoxKaldnes violates the terms of a non-compete agreement between Johns and Hydroxyl and that Johns misappropriated certain trade secrets and other confidential information that belongs to Hydroxyl in order to assist AnoxKaldnes in unfairly competing for business with Hydroxyl.

[1] Infilco Degremont, Inc. ("IDI") is also a plaintiff in this case and has brought claims against the Defendants, but it has recently moved to voluntarily dismiss those claims. *See* Plaintiffs' Motion For Leave To Amend Complaint And For Partial Voluntary Dismissal.

## ELEMENTS OF CLAIMS

Hydroxyl has asserted ten claims in their Complaint. The first, fourth and sixth claims are asserted by Hydroxyl against Defendant Michael Johns ("Johns") for Breach of Contract, Breach of Fiduciary Duty, and Breach of Duty of Loyalty. The third, fifth and seventh claims are asserted by Hydroxyl against AnoxKaldnes for Intentional Interference with Employment Contract, Inducing Breach of Fiduciary Duty, and Inducing Breach of Duty of Loyalty. The second, eighth, ninth, and tenth claims are asserted by Hydroxyl against both Johns and AnoxKaldnes[2] for Misappropriation of Trade Secrets, Intentional Interference with Prospective Contractual Relations, Conspiracy, and Unfair Competition.

### I. Hydroxyl's Claims Against Johns

#### A. Breach Of Contract

Hydroxyl's claim for breach of contract against Johns is premised upon an Inventions, Patents and Confidentiality Agreement (the "Agreement") between Johns and Hydroxyl, dated December 5, 2000 that contained, *inter alia*, a non-compete agreement. The agreement, by its terms, is governed by the law of British Columbia, which requires that Hydroxyl prove the existence and validity of the contract as well as a breach of that agreement by Johns. *See Coast Dryland Services Ltd. v. Canada (Ministry of Fisheries & Oceans)*, 2007 FC 16, ¶ 26 (Federal Court 2007). Hydroxyl intends to show that the Agreement is valid and meets all the requirements of a non-compete agreement under British Columbia law. Specifically, Hydroxyl will show that, primarily as a result of the

[2] AnoxKaldnes' corporate parent was recently acquired by Veolia Water Solutions & Technologies ("Veolia") and AnoxKaldnes was merged into a subsidiary of Veolia, named I. Kruger, Inc. ("Kruger"). Hydroxyl has moved to amend its Complaint in order to add Kruger as a defendant. In Hydroxyl's proposed Amended Complaint, Kruger is alleged to be liable to Hydroxyl under the second, eighth, ninth, and tenth claims.

fiercely competitive nature of the wastewater treatment industry: (1) Hydroxyl has a legitimate protectible interest served by the non-compete provision, (2) the restriction of Mr. Johns' employment is reasonable in terms of time, geographic area, and the nature of the activities that are prohibited, (3) the terms of the covenant are clear, and (4) the covenant does not run afoul of the public interest. *See Elsley v. J.G. Collins Ins. Agencies Ltd.*, [1978] 2 S.C.R. 916 (Supreme Court of Canada 1978). *See also KRG Insurance Brokers (Western) Inc. v. Shafron*, 64 B.C.L.R. (4th) 125, ¶ 24 (British Columbia Court of Appeals 2007). The burden is on the party attacking the covenant as invalid to prove that it is against the public interest. *KRG Insurance Brokers (Western) Inc.*, 64 B.C.L.R. (4th) at ¶ 24.

**B. Breach Of Fiduciary Duty**

In order to prove its fiduciary duty claim, Hydroxyl must first prove the existence of fiduciary obligations running from Johns to Hydroxyl. A fiduciary relationship exists when the defendant: (1) may exercise discretion or power, (2) can unilaterally exercise that power to affect the beneficiary's interests, and (3) the beneficiary is vulnerable to the fiduciary holding that power. *Frame v. Smith*, [1987] 2 S.C.R. 99, ¶¶ 39-42 (Supreme Court of Canada 1987). As Hydroxyl's Director of Sales and a senior corporate officer with significant responsibilities who was entrusted with vitally important and sensitive information, Johns exercised sufficient discretion and power within the organization to create fiduciary duties running from him to Hydroxyl.

To prove that Johns breached his fiduciary duties, Hydroxyl must prove that Johns exercised the power entrusted to him to the detriment of Hydroxyl. *A.(C.) v. C.(J.W.)*, 60 B.C.L.R. (3d) 92, ¶ 150 (British Columbia Court of Appeals 1998). *See generally*

*Hodgkinson v. Simms*, 97 B.C.L.R. (2d) 1, ¶¶ 28-29 (Supreme Court of Canada 1994). Hydroxyl intends to prove that Johns breached his fiduciary duties to Hydroxyl by soliciting employment with its closest competitor and by disclosing Hydroxyl's trade secrets and confidential information to his new employer in order to assist in unfair and more effective, competition with Hydroxyl.

**C. Breach Of Duty Of Loyalty**

As an employee, Johns owed a duty of loyalty to Hydroxyl. *Restauronics Services, Ltd. v. Forster*, 23 B.C.L.R. (4th) 281, ¶ 48 (British Columbia Court of Appeals 2004). In order to prove that he breached this duty, Hydroxyl will demonstrate that, while he was an employee, Johns engaged in activity in competition with or against the best interests of Hydroxyl. *Strata Plan 1261 v. 360204 B.C. Ltd.*, 1995 CarswellBC 659, ¶ 112 (British Columbia Supreme Court 1995).

**II. <u>Hydroxyl's Claims Against AnoxKaldnes</u>**

**A. Intentional Interference With Employment Contract**

In order to prevail on its intentional interference with employment contract claim, Hydroxyl will prove that AnoxKaldnes:

(1) was aware of John's covenant not to compete and/or employment contract;

(2) intended to interfere with that contract; and

(3) did directly interfere with the contract.

*See Engineering & Plumbing Supplies (Vancouver) Ltd. v. Intercan Acceptance*, 30 B.C.L.R. 170, ¶ 11 (British Columbia Court of Appeals 1981); *Western Stevedoring Co. v. Pulp, Paper & Woodworkers of Canada*, 1975 CarswellBC 391, ¶ 14 (British Columbia

Court of Appeals 1975); *Northwest Community Video, Ltd. v. T.W.U.*, 1978 CarswellBC 375, ¶ 23 (British Columbia Supreme Court 1978).

### B. Inducing Breach Of Fiduciary Duty / Inducing Breach Of Duty Of Loyalty

In order to prove that AnoxKaldnes induced Johns' breach of his fiduciary or loyalty duties to Hydroxyl, Hydroxyl will demonstrate that AnoxKaldnes: (1) was aware of the duties; (2) had the power to induce the breach of those duties; (3) actually induced the breach of those duties; and (4) actively participated in the breach. *MacMillian Bloedel, Ltd. v. Binstead*, 34 B.C.L.R. 256, ¶ 23 (British Columbia Supreme Court 1981), *rev'd on other grounds by* 58 B.C.L.R. 173 (British Columbia Court of Appeals 1981).

## III. <u>Hydroxyl's Claims Against Johns and AnoxKaldnes</u>

### A. Misappropriation Of Trade Secrets

Misappropriation of trade secrets is governed by the Uniform Trade Secrets Act, chapter 41 of title 6 of the Rhode Island General Laws ("the Act"), and the elements of Hydroxyl's claims are set forth in that statute. Under the Act, trade secret is defined as: "information, including a formula, pattern, compilation, program, device, method, technique, or process, that: (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (ii) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy." R.I. Gen. Laws 1956 § 6-41-1(4). The statute defines misappropriation as:

> (i) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(ii) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(I) Derived from or through a person who had utilized improper means to acquire it;

(II) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake[.]

R.I. Gen. Laws 1956 § 6-41-1(2).

Hydroxyl intends to prove that Michael Johns was aware of Hydroxyl's most sensitive and confidential competitive and technological information, which constitutes trade secrets under the Act. By virtue of his position as the Director of Sales, Johns had intimate and comprehensive knowledge of all Hydroxyl's sales and marketing practices, policies, client information, business opportunities and costing and pricing techniques and other information Hydroxyl relies upon in developing competitive bids. Moreover, due to his technical engineering background and expertise, Johns also had intimate and comprehensive knowledge of the technical and scientific aspects of all of Hydroxyl's proprietary products and processes and was a key player in their design and implementation. In fact, Johns was part of a team that planned and consulted with Hydroxyl's attorney regarding certain legal disputes between Hydroxyl and

AnoxKaldnes, and, in this capacity, he was privy to Hydroxyl's strategies for defending against threatened patent infringement litigation by AnoxKaldnes and challenging the validity of those patents.

Hydroxyl intends to demonstrate that Johns has actually disclosed Hydroxyl's trade secrets to his new employer in order to give AnoxKaldnes a competitive advantage over Hydroxyl and that, due to the nature of his new position, he will inevitably continue to disclose and or improperly use Hydroxyl's trade secrets to the detriment of Hydroxyl.

**B. Intentional Interference With Prospective Contractual Relations**

The claim for intentional interference with prospective contractual relations requires Hydroxyl to prove the following elements: (1) the existence of a business relationship or expectancy, (2) knowledge by Johns and/or AnoxKaldnes of the relationship or expectancy, (3) an intentional act of interference with the the relationship or expectancy by Johns and/or AnoxKaldnes, (4) proof that the interference caused harm to Hydroxyl, and (5) damages. *Avilla v. Newport Grand Jai Alai LLC*, 935 A.2d 91, 98 (R.I. 2007) (quoting *L.A. Ray Realty v. Town Council of Cumberland*, 698 A.2d 202, 207 (R.I. 1997)).

**C. Conspiracy**

Civil conspiracy is not an independent basis for liability, but rather a claim by Hydroxyl intended to establish that the defendants are jointly liable for one or more of the torts asserted in other claims. *Read & Lundy, Inc. v. Washington Trust Co. of Westerly*, 840 A.2d 1099, 1102 (R.I. 2004). In order to succeed, Hydroxyl must satisfy the elements of proof on one or more of their tort claims and prove that the defendants were engaged in an unlawful enterprise. *Id.* To prove an unlawful enterprise, the

plaintiff must prove by a preponderance of the evidence that the parties (1) entered into an agreement (2) to achieve an unlawful end. *Stubbs v. Taft*, 149 A.2d 706, 708-09 (R.I. 1959) (citing 12 C.J., Conspiracy § 234). Hydroxyl intends to show that Johns and AnoxKaldnes agreed that Johns would come to work for AnoxKaldnes and use the confidential information and trade secrets he had acquired through his employment with Hydroxyl to assist AnoxKaldnes to unfairly compete with Hydroxyl for new business.

**D. Unfair Competition**

Hydroxyl's unfair competition claim requires proof that Johns and/or AnoxKaldnes:

(1) employed a method of competition that;

(2) is likely to confuse and/or mislead potential customers of Hydroxyl, and

(3) cause customers to patronize AnoxKaldnes when

(4) the customers would have done business with Hydroxyl, but

(5) no actual confusion must be proved. *National Lumber & Building Material Co. v. Langevin*, 798 A.2d 429, 433 (R.I. 2002) (quoting *Merlino v. Schmetz*, 20 A.2d 266, 267 (R.I. 1941)); *Fund for Community Progress v. United Way of Southeastern New England*, 695 A.2d 517, 521-22 (R.I. 1997). Hydroxyl will show that, immediately following his departure from Hydroxyl, Johns attended a pre-bid meeting on behalf of AnoxKaldnes for a municipal wastewater treatment project in which he had been heavily involved on behalf of Hydroxyl and on which his identity, affiliation with Hydroxyl and its exclusive North American distributor and importance to Hydroxyl's bid were well known to the client. Hydroxyl will show how this and other actions by Johns and

Hydroxyl created confusion in the marketplace that disadvantaged Hydroxyl and assisted AnoxKaldnes to more effectively compete for new business.

Dated: Providence, Rhode Island
May 9, 2008

HYDROXYL SYSTEMS, INC. and
INFILCO DEGREMONT, INC.
By their attorney,

/s/ Geoffrey W. Millsom

Geoffrey W. Millsom (#6483)
ADLER POLLOCK & SHEEHAN P.C.
One Citizens Plaza, 8th Floor
Providence, RI 02903-2443
(401) 274-7200
Fax: (401) 751-0604/351-4607

**CERTICATE OF SERVICE**

I hereby certify that I filed the foregoing Rule 16 Conference Statement Of Claims through the ECF system on the 9th day of May, 2008, and that notice will be sent electronically to all counsel who are registered participants identified on the Mailing Information for Case No. 07-cv-00399 ML-LDA.

/s/ Geoffrey W. Millsom

*454026_1.doc*